IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17CV441

| | |
|---|---|
| VICTORIA SQUITIERI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| PIEDMONT AIRLINES, INC., ) | |
| ANTHONY BARDEN, DARRYLE ) | |
| WILLIAMS, DONIELLE PROPHETE, ) | |
| LARRY BALDWIN, and DARREL ) | |
| BUTLER, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court upon Defendants Piedmont Airlines, Inc. ("Piedmont"), Larry Baldwin, and Darrel Butler's (collectively the "Piedmont Defendants") Motion to Dismiss Parts of Plaintiff's Amended Complaint (Doc. No. 24), as well as Defendants Anthony Barden, Darryle Williams and Donielle Prophete's (collectively "Individual Defendants") Motion to Dismiss (Doc. No. 27). Both motions have been fully briefed and are ripe for disposition.

**FACTUAL BACKGROUND**

Defendant Piedmont is a regional airline and a wholly-owned subsidiary of American Airlines Group, Inc. (Am. Compl. ¶ 3). From February 2013 until October 2016 Plaintiff Victoria Squitieri was employed by Piedmont at its Charlotte operations hub. *Id*. at ¶¶ 12, 50. Squitieri was employed by Piedmont as a Customer Service Ramp Agent and as a Ramp Unit Manager. *Id*. at ¶¶ 11, 13. From August 19, 2013 until July 13, 2016 she held the Ramp Unit Manager position. *Id*. at ¶¶ 13, 36.

1

Defendants Barden, Williams and Prophete are officials of Communications Workers of America Local 3645. Mr. Barden is Area Vice President of Local 3645. *Id*. at ¶ 4. Mr. Williams is Local 3645 Executive Vice President. *Id*. at ¶ 5. Ms. Prophete is Local 3645 System Board Coordinator. *Id*. at. 6. Defendant Larry Baldwin is a ramp duty manager for Piedmont and Darrel Butler is a ramp manager. *Id*. at ¶¶ 7-8.

In July 2016 Squitieri maintained a personal Facebook page. On July 8, 2016 she posted comments on her Facebook page regarding the Black Lives Matter movement and her respect for law enforcement. *Id*. at ¶¶ 16-18. Squitieri posted:

> I have 2 brothers and 2 sisters-in-law that are law enforcement. I don't want to see any more of your bullshit posts about cops! There's good an [sic] there's bad – when you need them they come and you're damn glad! I don't care what color you are – stop jumping the bandwagon! Very simply – don't put yourself at the end of a cops [sic] gun! You're black so what, I don't give a shit – don't mean ya [sic] can run your mouth and get on your soap box just because you share skin color! Shut up already!

*Id*. at ¶ 19. Following comments of other persons about Squitieri's initial posting she posted:

> All lives matter. Period. I will not be preached to. I never said Black lives dont [sic] matter. I believe Black lives matter is stoking the fire of racial tension and hate by exploiting deaths and encouraging division. Period. Look again at my words and do not put words in my mouth.

*Id*. at ¶¶ 20-21.

Squitieri claims to have suffered harassment by co-workers on the job and online following her Black Lives Matter Facebook posts. *Id*. at ¶ 26. She alleges that the Individual Defendants[1] maliciously posted false, misleading statements regarding Squitieri's Facebook posts on the CWA Local 3645 Facebook page, the "CLT Eagle Swap" Facebook page, and in a

---

[1] The Amended Complaint does not specify which of the five defendants uttered or published which of the alleged defamatory statements described therein, and none of the statements are attached or quoted verbatim.

2

locked glass case in the workplace. *Id*. at ¶ 27. She alleges that the Individual Defendants falsely called her a racist and derided her character. *Id*. at ¶¶ 31, 45. Squitieri complained to Piedmont management about the Individual Defendants' Facebook posts, workplace memorandum and other allegedly slanderous statements. *Id*. at ¶ 48.

In her Amended Complaint, Plaintiff asserts six causes of action: (1) discriminatory disparate treatment due to race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C § 2000 *et seq*. (Count One); (2) harassment due to race in violation of Title VII (Count Two); (3) discrimination on the basis of race in violation of 42 U.S.C. § 1981 ("Section 1981") (Count Three); (4) harassment on the basis of race in violation of Section 1981 (Count Four); (5) defamation/libel *per se* (Count Five); and (6) defamation/libel *per se* (Count Six). The Piedmont Defendants have moved to dismiss Counts Two, Four, Five and Six of Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted. The Individual Defendants have likewise moved to dismiss the Fifth and Sixth Claims for Relief.

**DISCUSSION**

A Rule 12(b)(6) motion tests the sufficiency of the complaint. *Smith v. Frye*, 488 F.3d 263, 274 (4th Cir. 2007). In reviewing a Rule 12(b)(6) motion to dismiss, the court must accept as true the well-pleaded allegations of the complaint and view them in the light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Maktari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *McClean v. U.S.*, 566 F.3d 391, 399 (4th Cir. 2009), quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient allegations of fact that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not

contain "detailed factual allegations," it must include more than "a formulaic recitation of the elements of the cause of action." *Id.* at 555. The court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" is insufficient; rather, legal conclusions "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 668-69 (2009), citing *Twombly*, 550 U.S. at 555.

In Counts Two and Four of her Amended Complaint, Plaintiff alleges that Defendant Piedmont subjected her to harassment because of her race, in violation of Title VII and Section 1981, respectively. To state a claim for hostile work environment, Plaintiff must allege that: (1) she was subjected to unwelcome harassment; (2) the harassment was because of her race; (3) the harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive atmosphere; and (4) there is a basis to impose liability on the employer. *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010) (Title VII); *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344 (4th Cir. 2006) (Section 1981 principles are same as those for Title VII) (overruled on unrelated grounds by *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 269 (4th Cir. 2015)). A hostile work environment exists only where the work environment is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted). In determining whether a work environment is hostile, courts look at the totality of the circumstances; to wit, the frequency and severity of the harassing conduct, whether the conduct is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the plaintiff's work performance. *McNeal v.*

*Montgomery County*, 307 Fed. Appx. 766, 776 (4th Cir. 2009). The environment must be both subjectively and objectively offensive. *EEOC v. Sunbelt Rentals, Inc*., 521 F.3d 306, 315 (4th Cir. 2008).

"Simple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id*. (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Likewise, rude or insensitive treatment cannot sustain a hostile work environment claim. *See*, *e.g*., *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006). Noting that a plaintiff must clear a "high bar" to satisfy the severe and pervasive test, the Fourth Circuit has stated:

> Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than "rude treatment by [coworkers]," . . . "callous behavior by [one's] superiors," . . . or "a routine difference of opinion and personality conflict with [one's] supervisor," . . . are not actionable under Title VII.

*Sunbelt Rentals*, 521 F.3d at 315-16 (internal citations omitted).

Plaintiff's allegations of harassment against Defendant Piedmont do not rise to the level of severe and pervasive conduct based on her race. Plaintiff's Amended Complaint fails to sufficiently allege that the workplace was permeated with discriminatory intimidation, ridicule, and insult needed to demonstrate a hostile work environment claim. Instead, Plaintiff makes only conclusory and bare legal allegations to the effect that employees ridiculed her by calling her racist following her controversial Facebook post.

First, stating that Plaintiff is "racist" is not racial on its face and is not related to Plaintiff's race. Although such comments may have been unwelcome, there is simply no basis to conclude that they were racially-motivated. *See Trinh Huynh v. O'Neill*, No. Civ. A. 3:01CV445,

2002 WL 32507837, *5 (E.D. Va. May 29, 2002) ("Although the comments and actions the Plaintiff alleges were unwelcome, there is simply no basis to conclude that they were racially-motivated or even motivated by anything more than intra-office conflict among individuals who did not like each other."). Plaintiff's Amended Complaint clearly states that the alleged harassment to which she was subjected involved Facebook postings and rumors indicating that she is racist and should be disciplined. (Am. Compl. ¶¶ 26-27.) Under that theory, any alleged harassment was based on her co-workers' perceptions that she was racist, not because of her race. Further, the timing of the alleged harassment confirms that the harassment was based on Plaintiff's Facebook posts rather than her race. *See* Am. Compl. ¶ 26 ("Shortly after publication of the First Facebook Post, Squitieri suffered coworker-led racial harassment at work and online . . . ."). In support of her claims, Plaintiff asserts that similarly situated African-American employees engaged in comparable conduct but were not subjected to the same ridicule and unwelcome comments. In making this argument, Plaintiff erroneously attempts to conflate her disparate treatment claims with her harassment claims.

Second, even if the work environment was subjectively offensive to Plaintiff, it was not objectively offensive as a matter of law. Plaintiff fails to sufficiently allege that any of Defendant Piedmont's actions interfered with her ability to perform her duties. Nor were any alleged comments that she was racist severe or pervasive within the meaning of the law. *Sunbelt Rentals*, 521 F.3d at 315. "Courts have found the existence of a racially hostile workplace based on verbal harassment only in instances where unambiguous *racial epithets, slurs, or extremely abusive language* were uttered with recurring frequency." *Montano v. INOVA Health Care Servs.*, No. 1:08CV565(GBL), 2008 WL 4905982, *3 (E.D. Va. Nov. 12, 2008) (emphasis added) (citing *Spriggs v Diamond Auto Glass*, 242 F.3d 179, 185-186 (4th Cir. 2001) and *White v. BFI Waste*

6

*Svcs, LLC*, 375 F.3d 288 (4th Cir. 2004)). While allegedly calling Plaintiff racist may be offensive, it does not constitute unambiguous epithets or extremely abusive language and does not compare to the racial epithets, slurs, and extremely abusive language courts have found to be sufficiently severe within the meaning of the law. *See Montano*, 2008 WL 4905982 at *3 (dismissing plaintiff's racial harassment claim, holding that incidents of defendant's employees stating they assumed Hispanic patients lacked social security numbers do not rise to the requisite level of harassment, stating "[e]ven if the comments that these employees made are offensive, they do not constitute unambiguous epithets or extremely abusive language."); *Spriggs,* 242 F.3d at 185-186 (holding that a workplace where a supervisor constantly referred to African Americans as "monkeys" was a hostile work environment, noting that calling someone a "monkey" "goes far beyond the merely unflattering; it is degrading and humiliating in the extreme.").

Further, Plaintiff's allegations that Piedmont coworkers ridiculed Plaintiff "on an almost daily basis, subjecting her to contempt by falsely calling her racist, among other false statements" are merely conclusory allegations that lack any factual support. (Am. Compl. ¶ 31.) Such conclusory allegations are insufficient to give rise to a plausible claim that she was subjected to harassment severe and pervasive enough to effect a term, condition, or privilege of employment. *See Babayan v. Delfin Group USA, LLC*, C.A. No. 2:13-2667-PMD, 2014 WL 5488405, *6 (D.S.C. Oct. 8, 2014) (dismissing plaintiff's harassment claim where plaintiff alleged "in a general and conclusory manner that the defendant subjected him to racial comments, that he was 'constantly' subjected to poor treatment which created a 'hostile work environment', and that Gordon's conduct was 'severe, pervasive and happened almost daily," noting that "[t]hese are all quintessential conclusory allegations lacking any factual support.").

7

Plaintiff only identifies three specific occasions where a Piedmont employee told another employee that Plaintiff was racist. (Am. Compl. ¶¶ 41-43.) Such isolated incidents are neither severe nor pervasive. *Mosby-Grant,* 630 F.3d at 337; *see Faragher,* 524 U.S. at 788 (" [I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment"). As Plaintiff cannot establish that she suffered severe or pervasive harassment because of her race, her harassment claims set forth in Counts Two and Four must be dismissed.

Both the Piedmont Defendants and the Individual Defendants move to dismiss Plaintiff's Fifth and Sixth Causes of Action alleging defamation/libel *per se*. "To state a North Carolina claim for defamation, a plaintiff must allege that the defendant caused injury to the plaintiff's reputation by making 'false, defamatory statements of or concerning the plaintiff, which were published to a third person.'" *Diagnostic Devices, Inc. v. Pharma Supply, Inc*., 2009 WL 2998004, *3 (W.D.N.C. Sept. 15, 2009), quoting *Smith-Price v. Charter Behavorial Health Sys*., 595 S.E.2d 778, 783 (N.C. Ct. App. 2004). "Defamation is divided into two distinct torts: libel and slander." *Id.,* citing *Boyce & Isley, PLLC v. Cooper*, 568 S.E.2d 893, 898 (N.C. Ct. App. 2002. "Libel encompasses any false, written publication, while slander encompasses a false oral communication." *Id.,* citing *Iadanza v. Harper*, 611 S.E.2d 217, 222 (N.C. Ct. App. 2005). "'Slander *per se* is an oral communication to a third person which amounts . . . to an allegation that impeaches the plaintiff in his trade, business or profession.'" *Id.*, quoting *Phillips v. Winston-Salem/Forsyth County Bd. of Educ*., 450 S.E.2d 753, 757 (N.C. Ct. App. 1994).

Plaintiff relies on alleged statements made by Defendant Butler and Defendant Baldwin that Plaintiff is racist and "other false statements," to assert two defamation claims. (Am. Compl. ¶¶ 79-94.) Under North Carolina law, "expressions of opinion not asserting provable facts are

8

protected speech." *Daniels v. Metro Magazine Holding Co., L.L.C*., 634 S.E.2d 586, 590 (N.C. Ct. App. 2006). "[I]f a defendant's words cannot be described as either true or false, they are not actionable." *Biospherics, Inc. v. Forbes, Inc*., 151 F.3d 180, 183 (4th Cir. 1998). At a minimum, statements that cannot be proven as verifiably true or false are non- actionable opinion, and cannot support defamation liability. *Milkovich v. Lorain Journal Co*., 497 U.S. 1, 20 (1990). "Whether a statement is of actionable fact is a question of law to be decided by th(e) court." *Nobles v. Boyd*, No. 7:14-CV-214-FL, 2015 WL 2165962, *10 (E.D.N.C. May 8, 2015) citing *Biospherics*, 151 F.3d at 184-186.

Statements indicating that Plaintiff is racist are clearly expressions of opinion that cannot be proven as verifiably true or false. While there appears to be no North Carolina court expressly addressing this issue, many courts in other jurisdictions that have faced the issue of defamation claims based on accusations of bigotry or racism have held the statements to be nonactionable statements of opinion. *See*, *e.g*., *Stevens v. Tillman*, 855 F.2d 394, 403 (7th Cir. 1988) (holding that neither general statements charging a person with being racist, unfair, unjust, nor references to general discriminatory treatment, without more, constitute provably false assertions of fact); *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995) (holding that calling a judge "anti-Semitic" was a non-actionable opinion); *Ward v. Zelikovsky*, 643 A.2d 972, 980 (N.J. 1994) (accusation that plaintiffs "hated Jews" nonactionable); *Covino v. Hagemann*, 627 N.Y.S.2d 894, 895 (N.Y. Sup. Ct. 1995) (dismissing defamation claim based on statement that plaintiff was "racially insensitive," observing "an expression of opinion is not actionable as a defamation, no matter how offensive, vituperative, or unreasonable it may be" and "[a]ccusations of racism and prejudice" have routinely been found to constitute non-actionable expressions of opinion); *Williams v. Kanemaru*, 309 P.2d 972 (Haw. Ct. App. 2013) (accusation of racism based

9

on disclosed facts not actionable for defamation); *Lennon v. Cuyahoga County Juvenile Court*, No. 86651, 2006 WL 1428920, * 6 (Ohio Ct. App. May 25, 2006) ("[W]e find that appellant's being called a racist was a matter of one employee's opinion and thus is constitutionally protected speech, not subject to a defamation claim."). Furthermore, the North Carolina Court of Appeals has held that calling an individual a fascist was an opinion and not actionable defamation. *See Daniels,* 634 S.E.2d at 591. Accordingly, any statements that Plaintiff is a racist are statements of opinion and are not actionable for defamation.

To the extent Plaintiff's defamation/libel *per se* claims rely on other statements, Plaintiff fails to specifically identify them. In order for the Court to determine whether a statement is defamatory, it is essential for the Plaintiff to describe the actual statements or conduct that give rise to the claims. *Dupree v. City of Lexington Police Dep't*, No. 1:12CV345, 2012 WL 1799193, *9 (M.D.N.C. May 17, 2012) (citing *Smith v. McGraw*, No. 10CV2310AW, 2011 WL 1599579, *8 (D. Md. Apr. 27, 2011). It is well-settled that conclusory statements of legal conclusions are insufficient to state a claim for defamation or libel *per se*. *See Mayfield v. NASCAR*, 674 F.3d 369, 377-78 (4th Cir. 2012) (ruling that defamation claim could not survive motion to dismiss where complaint contained only "conclusory allegation — a mere recitation of the legal standard"); *Smith*, 2011 WL 1599579 at *8 ("Thus, a defamation complaint must contain more than the plaintiff's personal conclusion that she was the victim of defamatory statements."). Accordingly, Plaintiff's defamation/libel claims must fail.

IT IS THEREFORE ORDERED that Defendants' motions to dismiss are hereby GRANTED, and Plaintiff's Second, Fourth, Fifth, and Sixth Claims for Relief are hereby dismissed.

Signed: February 16, 2018

Graham C. Mullen
United States District Judge